Brian A. Kilmer
Texas Bar No. 24012963
Email: bkilmer@oakllp.com
J. Meritt Crosby
Texas Bar No. 24050462
Email: mcrosby@oakllp.com
Brian D. Roman
Texas Bar No. 24037386
Email: broman@oakllp.com
OKIN ADAMS & KILMER LLP
3102 Maple Avenue, Suite 240
Dallas, Texas 75201
Telephone: 214.800.2390
Facsimile: 888.865.2118
**Counsel for Douglas J. Brickley, Trustee for the Hallwood Energy III Creditors' Trust**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § <br> § <br> § <br> **HALLWOOD ENERGY, L.P.,** *et al.*, § <br> § <br> **DEBTORS.** § | | **CASE NO. 09-31253** <br><br> **(Chapter 11)** |
| **DOUGLAS J. BRICKLEY, TRUSTEE** § <br> **FOR THE HALLWOOD ENERGY III** § <br> **CREDITORS' TRUST,** § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> **J. ARON & COMPANY,** § <br> § <br> Defendant. § | | **Adversary No. 10-_____** |

**COMPLAINT TO AVOID TRANSFER PURSUANT TO 11 U.S.C. §§ 544 AND 548 AND SECTIONS 273 AND 276 OF THE NEW YORK UNIFORM FRAUDULENT CONVEYANCE ACT AND RECOVER PROPERTY TRANSFERRED PURSUANT TO 11 U.S.C. § 550**

**COMES NOW,** Douglas J. Brickley (the "Trustee"), the Trustee for the Hallwood Energy III Creditors' Trust ("Trust III"), and files this Complaint to Avoid Transfer Pursuant to 11 U.S.C. §§ 544 and 548 and Sections 273 and 276 of the New York Uniform Fraudulent Conveyance Act and Recover Property Transferred Pursuant to 11 U.S.C. § 550 (the "Complaint") against J. Aron & Company ("J. Aron"), an affiliate of the Goldman Sachs Group, Inc. ("Goldman"). In support of the Complaint, the Trustee respectfully submits as follows:

## I. NATURE OF THE ACTION

1. On March 1, 2009, Hallwood Energy, L.P., Hallwood Energy Management, LLC, Hallwood Gathering, L.P., HG II Management, LLC, Hallwood Petroleum, LLC, and Hallwood SWD, LLC (collectively, the "Debtors") filed voluntary petitions in the United States Bankruptcy Court for the Northern District of Texas for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On October 16, 2009, the Bankruptcy Court entered an order confirming the First Amended Joint Plan of Reorganization for the Debtors proposed by Hall Phoenix/Inwood, Ltd. (the "Plan"). The Plan became effective on December 4, 2009. Pursuant to the Plan, unsecured creditors are not paid in full and are owed a significant amount of money.

3. The Plan: (i) provides for the creation of Trust III; and (ii) empowers the Trustee, on behalf of Trust III, to prosecute, litigate, and settle any causes of action against J. Aron arising under sections 544, 548, and 550 of the Bankruptcy Code.

4. The Trustee brings this adversary proceeding seeking to avoid a certain transfer made to J. Aron as a fraudulent transfer under sections 544 and 548 of the Bankruptcy Code and sections 273 and 276 of the New York Uniform Fraudulent Conveyance Act ("NYUFCA"). In

addition, the Trustee seeks recovery of the property transferred pursuant to section 550 of the Bankruptcy Code.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court may enter final judgment on the merits of this case. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. PARTIES

6. The Plaintiff is Douglas J. Brickley, the Trustee for the Hallwood Energy III Creditors' Trust, created pursuant to the First Amended Joint Plan of Reorganization for the Debtors proposed by Hall Phoenix/Inwood, Ltd. ("Hall Phoenix") in the above-referenced Chapter 11 Bankruptcy Case of Hallwood Energy L.P., *et al.*, Bankruptcy Case No. 09-31253, presently pending before The Honorable Stacey G.C. Jernigan.

7. The Defendant is J. Aron & Company, an affiliate of Goldman Sachs Group, Inc., and a general partnership with its principal place of business at 85 Broad Street, New York, New York, 10004, who may be served with process by serving its registered agent for service of process, CT Corporation System, 111 Eighth Avenue, New York, New York, 10011.

## IV. BACKGROUND

8. On February 8, 2006, the Debtors entered into a $65 million loan facility with J. Aron (the "J. Aron Loan Facility"), which was secured by all of the Debtors' assets. As of December 31, 2006, the Debtors had drawn $40 million on the J. Aron Loan Facility. Under the J. Aron Loan Facility, if an event of default occurred on or prior to the second anniversary of the

closing date, the Debtors were required to pay, in addition to the payment of principal and interest accrued thereon, a prepayment penalty (the "Prepayment Penalty").

9. Upon information and belief, the J. Aron Loan Facility was in default in December 2006. As a result, the J. Aron Loan Facility was amended in December 2006 to: (i) allow for the sale of certain undeveloped leaseholds; (ii) extend the test dates for provided collateral coverage ratios; (iii) extend the prepayment penalty period; and (iv) cure several loan defaults.

10. In addition, upon information and belief, in connection with a $25 million capital contribution made by the Debtors' investors in December 2006, J. Aron agreed to enter into a waiver and loan amendment which, in addition to waiving several loan defaults, significantly increased the amount of the Prepayment Penalty from $3.2 million to $9.8 million.

11. In April 2007, the Debtors entered into a new loan facility with Hall Phoenix (the "Hall Phoenix Loan Facility") and paid off the J. Aron Loan Facility in its entirety. Included in the payoff of the J. Aron Loan Facility was the full amount of the recently increased Prepayment Penalty in the amount of $9.8 million.

12. The Prepayment Penalty amounts to an approximate 25% penalty on all amounts outstanding at the time of prepayment ($40 million) and, when combined with default interest due under the J. Aron Loan Facility, amounts to a total return of approximately 34% to J. Aron on a 14-month loan.

13. The Debtors were insolvent at the time of payment of the Prepayment Penalty or were rendered insolvent by payment of the Prepayment Penalty. There is ample evidence of the Debtors' insolvency at the time of the transfer, including: (i) numerous depositions of executives of Hall Phoenix and the Debtors conducted during the Debtors' bankruptcies which illustrate the

Debtors' insolvency; (ii) a May 2009 valuation of the Debtors' assets by the Bankruptcy Court which estimated the Debtors' assets at $28 to $38 million, an amount significantly below the $40 million outstanding at the time of payment of the Prepayment Penalty; and (iii) the Debtors' 2008 10-K, which lists the Debtors' proven reserves at $28 million, an amount far lower than the $40 million outstanding under the J. Aron Loan Facility. The Trustee also expects that expert testimony will support the above evidence.

14. Upon information and belief, Goldman was a 5% equity holder and board member of the Debtors at the time of the renegotiation of the Prepayment Penalty, and Goldman and J. Aron were aware of the Debtors' financial woes and impending defaults under the J. Aron Loan Facility, as well as the Debtors' intentions to obtain take-out financing in the very near future.

## V. CAUSES OF ACTION

*Count I: Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B)*

15. The Trustee incorporates by reference the allegations in paragraphs 1 – 14.

16. Pursuant to section 548(a)(1)(B) of the Bankruptcy Code, a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred within two years before the date of the filing of the petition, if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for such transfer or obligation and was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. 11 U.S.C. § 548(a)(1)(B).

17. The elements of a fraudulent transfer under section 548(a)(1)(B) exist in this case. First, the Debtors paid the Prepayment Penalty to J. Aron in April 2007, within two years of the March 1, 2009 petition date.

18. Second, the Debtors received less than a reasonably equivalent value in exchange for the payment of the Prepayment Penalty. Indeed, the Debtors received no consideration, financial or otherwise, in exchange for the payment of the Prepayment Penalty. The Prepayment Penalty was an egregious 25% penalty on a 14-month loan which was triggered by a prior default under the J. Aron Loan Facility and does not constitute reasonably equivalent value.

19. Third, the Debtors were insolvent at the time of the transfer of the Prepayment Penalty, or became insolvent as a result of such transfer. The Bankruptcy Code defines insolvency as a "financial condition such that the sum of the entity's debts is greater than all of its property, at a fair valuation…" 11 U.S.C. § 101(32).

20. There is ample evidence of the Debtors' insolvency at the time of transfer, including without limitation: (i) the deposition testimony of Debtors' executives; (ii) a court valuation; (iii) SEC filings; and (iv) the Debtors' prior and impending defaults under the J. Aron Loan Facility. In addition, the Trustee believes that expert testimony will support the above evidence.

21. Therefore, the Trustee is entitled to an order and judgment under 11 U.S.C. § 548(a)(1)(B) avoiding the transfer of the Prepayment Penalty.

*Count II:  Fraudulent Transfer Under New York Law Because the Prepayment Penalty is an Unreasonable and Unenforceable Penalty*

22. The Trustee incorporates by reference the allegations in paragraphs 1-21.

23. Section 544 of the Bankruptcy Code allows the trustee to avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an allowed unsecured claim. *See* 11 U.S.C. § 544(b).

24. New York law provides that a prepayment penalty which is not calculated in light of the damages suffered by the lender as a result of prepayment is avoidable as an unreasonable and unenforceable penalty.

25. The Prepayment Penalty approximates neither the damages incurred by J. Aron as a result of prepayment nor the value of any benefits conferred on the Debtors by prepayment, but rather constitutes an egregious penalty which is grossly disproportionate to any value added to the Debtors or damages suffered by J. Aron.

26. The Prepayment Penalty was paid less than five months after its renegotiation and, at nearly $10 million, constitutes an approximate 25% penalty on the $40 million outstanding under the J. Aron Loan Facility, an amount made all the more outrageous by: (i) the 14-month term and secured nature of the underlying loan; and (ii) an additional 9% in default interest paid to J. Aron, resulting in a total recovery of approximately 34% by J. Aron on the principal amount advanced under the J. Aron Facility.

27. Accordingly, the Prepayment Penalty is an unenforceable penalty under New York law, and the Trustee is entitled to an order and judgment avoiding the transfer of the Prepayment Penalty.

*Count III: Fraudulent Transfer Pursuant to Section 273 of NYUFCA*

28. The Trustee incorporates by reference the allegations in paragraphs 1 – 27.

29. The Trustee brings this claim pursuant to section 273 of NYUFCA, as made applicable by section 544 of the Bankruptcy Code.

30. Section 273 of NYUFCA provides that "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred without fair consideration."

31. The Debtors did not receive fair consideration in exchange for the payment of the Prepayment Penalty to J. Aron. The Prepayment Penalty was a grossly disproportionate 25% penalty extracted from the Debtors that brought no new value or benefits to the Debtors.

32. At the time of the transfer of the Prepayment Penalty, the Debtors were insolvent or became insolvent as a result of such transfer.

33. Finally, numerous unsecured creditors of the Debtors exist whose claims were in existence at the time of the transfer of the Prepayment Penalty who, but for the Debtors' payment of the Prepayment Penalty, would have received a substantial payment in the Debtors' bankruptcy cases.

34. Thus, pursuant to section 273 of NYUFCA, the Trustee is entitled to an order and judgment avoiding the transfer of the Prepayment Penalty.

***Count IV: Fraudulent Transfer Pursuant to Section 276 of NYUFCA***

35. The Trustee incorporates by reference the allegations in paragraphs 1 – 34.

36. The Trustee brings this claim pursuant to section 276 of NYUFCA, as made applicable by section 544 of the Bankruptcy Code.

37. Section 276 of the NYUFCA provides that "every conveyance made and every obligation incurred with actual, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

38. The payment of the Prepayment Penalty to J. Aron bears many "badges of fraud" commonly associated with fraudulent transfers, and actual intent may accordingly be inferred or presumed under the circumstances of this case.

39. Under New York law, the badges of fraud on which a trustee may rely when proving actual intent include, among others: (i) an unconscionable discrepancy between the value of the property transferred and the consideration received; (ii) the close relationship between the parties to the allegedly fraudulent transaction; (iii) a questionable transfer not in the usual course of business; (iv) the general chronology of the event and transactions under inquiry; (v) secrecy in the transfer; and (vi) the financial condition of the transferor at the time of transfer.

    *i.    There is an Unconscionable Discrepancy Between Value of the Property Transferred and Consideration Received*

40. Many courts applying New York law and other state law have identified an unconscionable discrepancy between the value of the property transferred and the consideration received as a valid badge of fraud. Courts have also deemed payments which are less egregious than the 25% Prepayment Penalty at issue in this case to be transfers which are actually fraudulent.

41. The Debtors received no consideration in exchange for the payment of the Prepayment Penalty, as the Prepayment Penalty added no value, financial or otherwise, to the Debtors. Rather, the Prepayment Penalty comprises nothing more than a massive penalty totaling approximately 25% of the aggregate amount of the J. Aron Loan Facility which, when combined with default interest payable under the J. Aron Loan Facility, gives J. Aron an unconscionable 34% return on a 14-month loan. The lack of consideration underlying payment of the Prepayment Penalty constitutes a badge of fraud.

### ii. Circumstances Surrounding the Transfer

42. In light of surrounding events and circumstances, the timing of payment of the Prepayment Penalty constitutes a badge of fraud, as J. Aron was likely aware at the time it negotiated an increase of the Prepayment Penalty in December 2006 from $3.2 million to $9.8 million that a default under the J. Aron Loan Facility was likely going to occur in March or April 2006 and that the Debtors were seeking take-out financing.

43. Upon information and belief, Goldman held a 5% equity position in the Debtors and also possessed a seat on one of the Debtors' board of directors. Accordingly, J. Aron was "on both sides" of the J. Aron Loan Facility, had knowledge of the dire financial status of the Debtors, and was in a position to foresee that an increase of the Prepayment Penalty as part of the December 2006 loan modification and default waiver could be extremely lucrative for J. Aron, as prepayment of the J. Aron Facility was potentially on the immediate horizon. Armed with this insider knowledge, J. Aron apparently renegotiated the Prepayment Penalty in December 2006, subsequently applied extensive pressure on the Debtors to obtain take-out financing from Hall Phoenix, and received payment on the 25% Prepayment Penalty less than 5 months after the loan was amended by the Debtors and J. Aron.

### iii. The Close Relationship of the Parties to the Transaction

44. Courts have found a badge of fraud to exist where the parties to the allegedly fraudulent transfer were particularly close. As discussed above, the Debtors and J. Aron/Goldman had a close relationship, due to Goldman's equity position in the Debtors and seat on one of the Debtors' board of directors, that removes the Prepayment Penalty from the ambit of an ordinary arms-length transaction.

45. Depositions of the Debtors' executives taken during the Debtors' bankruptcies provide evidence that J. Aron was well aware that, due to the Debtors' financial problems: (i) a default under the J. Aron Loan Facility was highly likely in the near future; and (ii) take-out financing was available from the Debtors' investors, as the investors needed to protect their investment and prevent J. Aron from foreclosing on the Debtors' assets. The deposition testimony also revealed that J. Aron exerted significant pressure over the Debtors in connection with the Debtors' decision to prepay the J. Aron Loan Facility. Accordingly, the parties' close relationship constitutes an additional badge of fraud in support of a finding of actual fraud under NYUFCA.

        *iv.       The Secrecy of the Transaction*

46. Courts have found a badge of fraud to exist where the transaction at issue is conducted in secret and lacks transparency. The December 2006 renegotiation of the Prepayment Penalty was apparently conducted and completed without a full board vote, leading to serious questions about whether all board members were informed in the renegotiation and allowed input into the decision.

47. Indeed, various depositions conducted during the course of the Debtors' bankruptcies indicate that at least two board members of the Debtors were not aware until payment of the Prepayment Penalty that it had even been renegotiated. Aside from raising serious questions about the overall propriety of consummating such a transaction without board approval, the fact that the Debtors' own board was not informed of the renegotiation certainly paints the payment of the Prepayment Penalty as the type of "secret transaction" contemplated by the courts in an analysis of fraudulent intent.

      *v.     The Unusualness of the Transaction*

48. Courts will find a badge of fraud where a transfer is found to be outside the ordinary course of business. As discussed above, the Prepayment Penalty constitutes a massive penalty amounting to 25% of the total amount outstanding under the J. Aron Loan Facility, a figure made all the more outrageous when it is added to the 9% default interest paid to J. Aron to create a 34% return to J. Aron on a 14-month loan. A return of this magnitude on a secured loan in such a short time span is not typical or ordinary course.

      *vi.     Financial Condition of the Debtors Before and After the Transaction*

49. Courts have found a debtor's condition at the time of the allegedly fraudulent transfer to constitute a badge of fraud, particularly where the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. As noted above, there is ample evidence of the Debtors' insolvency at the time of transfer or as a result of the transfer.

50. Indeed, the Debtors were insolvent at the time of payment of the Prepayment Penalty, and payment of the Prepayment Penalty served to severely deepen this insolvency. Accordingly, the Debtors' financial status at the time of payment of the Prepayment Penalty constitutes a badge of fraud in an analysis of fraudulent intent.

51. Thus, pursuant to section 276 of NYUFCA, the Trustee is entitled to an order and judgment avoiding the transfer of the Prepayment Penalty.

***Count V: Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550***

52. The Trustee incorporates by reference the allegations in paragraphs 1 – 51.

53. Section 550 of the Bankruptcy Code allows the trustee to recover, for the benefit of the estate, the property transferred and avoided under sections 544 and 548 from the initial

transferee of such transfer or the entity for whose benefit such transfer was made. *See* 11 U.S.C. § 550(a).

54. As alleged above, the Trustee is entitled to avoid the transfer of the Prepayment Penalty pursuant to sections 544 and 548 of the Bankruptcy Code. J. Aron was the initial transferee of the Prepayment Penalty and was the person for whose benefit the transfer was made.

55. Thus, pursuant to section 550(a) of the Bankruptcy Code, the Trustee is entitled to an order and judgment recovering from J. Aron the amount of the Prepayment Penalty ($9.8 million) plus fees and interest.

*Count VI: Recovery of Attorney's Fees Pursuant to Section 276-A of NYUFCA*

56. The Trustee incorporates by reference the allegations in paragraphs 1 – 55.

57. Section 276-A of NYUFCA provides that "[I]n an action or special proceeding brought by a…trustee in bankruptcy…for the benefit of creditors to set aside a conveyance by the debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, in which action or special proceeding the…trustee in bankruptcy…shall recover judgment, the justice or surrogate presiding the trial shall fix the reasonable attorney's fees of the…trustee in bankruptcy…and the…trustee in bankruptcy…shall have judgment therefore against the debtor and transferee who are defendants in addition to the other relief granted in the judgment."

58. Accordingly, the Trustee requests, pursuant to section 276-A of NYUFCA, payment of all attorney's fees and costs associated with the prosecution of this case.

*Count VII: Recovery of Interest*

59. The Trustee incorporates by reference the allegations in paragraphs 1 – 58.

60. It is well-settled that interest upon a voidable preference recovered by a trustee in bankruptcy should be computed from the date of demand for its return or, in the absence of a demand, from the date of the commencement of the suit for recovery.

61. Accordingly, the Trustee also requests the payment of interest on the Prepayment Penalty dating from January 22, 2010, the date of the Trustee's initial demand to J. Aron for return of the Prepayment Penalty.

## VI. PRAYER

WHEREFORE, the Trustee respectfully requests that, upon trial of this matter, the Court: (i) enter judgment in favor of the Trustee declaring the payment of the Prepayment Penalty an avoidable transfer pursuant to sections 544 and 548 of the Bankruptcy Code; (ii) allow the Trustee to recover such avoided transfer pursuant to section 550 of the Bankruptcy Code; (iii) award the Trustee attorney's fees and costs incurred in connection with the preparation and prosecution of this Complaint; and (iv) award the Trustee interest incurred on the Prepayment Penalty from January 22, 2010 to the date of judgment. The Trustee further requests that the Court award the Trustee such other and further relief, both at law and in equity, to which it is justly entitled.

Dated: July 7, 2010

Respectfully submitted,

**OKIN ADAMS & KILMER LLP**

By: */s/ Brian A. Kilmer*
Brian A. Kilmer
Texas Bar No. 24012963
Email: bkilmer@oakllp.com
J. Meritt Crosby
Texas Bar. No. 24050462
Email: mcrosby@oakllp.com
Brian D. Roman
Texas Bar No. 24037386
Email: broman@oakllp.com
3102 Maple Avenue, Suite 240
Dallas, Texas 75201
Telephone: 214.800.2390
Facsimile: 888.865.2118

**COUNSEL FOR DOUGLAS J. BRICKLEY, TRUSTEE FOR THE HALLWOOD ENERGY III CREDITORS' TRUST**